**LITTLE & KARZAI LLP**
Eric R. Little, Bar No. 169021
Email: erl@landkllp.com
Najwa T. Karzai, Bar No. 210415
Email: ntk@landkllp.com
3333 Michelson Dr., Suite 735
Irvine, California 92612
Telephone: (949) 333-1699
Facsimile:   (949)333-1697

**Attorneys for:** Plaintiff
Miramar Brands Group, Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRAMAR BRANDS GROUP, INC., a California Corporation,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>AMERICAN CASUALTY CO. OF READING, PENNSYLVANIA., an Illinois Corporation, and DOES 1-10,<br><br>　　　　Defendant. | **CASE NO.: 2:18-cv-04136**<br><br>**COMPLAINT FOR:**<br><br>　1.　**Declaratory Relief**<br><br>　2.　**Breach of Contract**<br><br>　3.　**Breach of the Covenant of Good Faith and Fair Dealing**<br><br>**Jury Trial Demanded** |

**COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT AND BREACH OF THE COVENANT OF GOOD FAITH AN FAIR DEALING**

Plaintiff MIRAMAR BRANDS GROUP, INC. ("Miramar"), hereby makes its Complaint against Defendant AMERICAN CASUALTY COMPANY OF READING, PA ("ACCO") and Does 1 through 10, and alleges as follows:

## NATURE OF THE ACTION

1. This is an insurance coverage action for declaratory relief, breach of contract and breach of the implied covenant of good faith and fair dealing based on ACCO's failure to fulfill its contractual obligation under the insurance policy it issued to Miramar, to defend Miramar against potentially covered claims of slogan infringement in Miramar's advertisement. Eric V. Fonoimoana filed Counterclaims against Miramar in an underlying action styled as: *Miramar Brands Group, Inc. v. Eric V. Fonoimoana,* USDC, C.D. of California, Case No. 2:2016-cv-04224-PSG (RAOx) (the "*Fonoimoana* Action").

2. The *Fonoimoana* Action sought damages that were potentially within the coverage of the policy issued by ACCO, triggering ACCO's duty to defend Miramar against Fonoimoana's claims.

3. ACCO denied it had a duty to defend Miramar.

4. As a result of ACCO' refusal to defend Miramar in the *Fonoimoana* Action, Miramar incurred substantial attorneys' fees and costs defending the *Fonoimoana* Action.

## PARTIES

5. Plaintiff Miramar is a corporation organized and existing under the laws of the State of California, having its principle place of business in Pasadena, California.

6. Miramar is informed and believes, and thereupon alleges, that ACCO is an Illinois Corporation with its principal place of business in Chicago, Illinois. At all times mentioned in this Complaint, Miramar is informed and believes and thereon alleges that ACCO was authorized to and did business in the State of California.

- 1 -
**COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

7. Miramar does not presently know the true names and capacities of the Defendants sued herein as DOES 1 through 10 inclusive. Miramar will seek leave of court to amend this Complaint to allege said Defendants' true names and capacities when Miramar ascertains them.

## JURISDICTION

8. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Complete diversity of citizenship exists between the parties. Miramar is a California corporation with its principal place of business in Pasadena, California and ACCO is an Illinois Corporation with its principal place of business in Chicago, Illinois.

9. The amount in controversy is in excess of $75,000, exclusive of interest and costs.

## VENUE

10. Venue is the proper because Miramar conducts business in Pasadena, California and a substantial portion of the events and/or omissions giving rise to the claims occurred in the City of Pasadena, County of Los Angeles, State of California.

## ACCO' POLICY

11. ACCO issued to Miramar a Commercial General Liability Policy bearing No. 5085416639, effective from September 11, 2013 to September 11, 2014, with limits of $1 million. ("The ACCO Policy"). A true and correct copy of the pertinent sections of ACCO's Policy is attached hereto as **Exhibit "A."**

12. The ACCO Policy provides in pertinent part:

A. Coverages

1. Business Liability (Bodily Injury, Property Damage, Personal and Advertising Injury)

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "personal and

> advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. . . .

    b. This insurance applies to:

       …

       (2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

13. The Policy contains the following relevant exclusions, providing that "[t]his insurance does not apply to:"

    p. Personal and Advertising Injury

       "Personal and advertising injury":

       (1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

       (2) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

       …

       (13) Arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. However, this exclusion does not apply to infringement, in your "advertisement," of copyright, trade dress or slogan.

…

14. The policy defines "personal and advertising injury" as injury arising out of one or more of the following offenses:

    (g) infringing upon another's … or slogan in your "advertisement."

    …

15. The policy defines "advertisement" as:

> A notice that is broadcast or published to the general public or specific market segments about your goods, products or services

- 3 -
**COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING**

for the purpose of attracting customers or supporters." …

## THE *FONOIMOANA* ACTION

16. On June 14, 2016, Miramar filed suit against Fonoimoana, asserting seven causes of action for (1) federal trademark infringement; (2) federal unfair competition and false advertising; (3) common law trademark infringement; (4) federal trademark dilution; (5) state trademark dilution and injury to reputation; (6) unfair competition in violation of California Business and Professions Code §§ 17200 *et seq.*; and (7) common law unfair competition.

17. On July 8, 2016, Fonoimoana filed an Answer to Miramar's Complaint and asserted counterclaims for trademark infringement under federal and California law, false designation of origin and false descriptions, unfair competition, and for declaratory judgment (the "Counterclaims"). A true and correct copy of the Counterclaims is attached hereto as **Exhibit "B."**

18. The *Fonoimoana* Action ultimately settled.

## NOTICE OF THE *FONOIMOANA* ACTION AND ACCO'S DENIAL OF COVERAGE

19. ACCO was provided notice of the Counterclaims on April 12, 2017.

20. By letter dated May 1, 2017, ACCO denied coverage for the Counterclaims. A true and correct copy of ACCO's May 1, 2018 letter is attached hereto as **Exhibit "C."**

21. By letter dated May 3, 2017, Miramar provided a detailed factual and legal analysis explaining that the Counterclaims alleges potentially covered slogan infringement in Miramar's advertisement, triggering ACCO's duty to defend Miramar. Miramar requested that ACCO reconsider its denial of coverage. A true and correct copy of Miramar's May 3, 2017 letter is attached hereto as **Exhibit "D."**

22. By letter dated May 10, 2017, ACCO reaffirmed its denial of coverage. A true and correct copy of ACCO's May 10, 2017 letter is attached hereto as **Exhibit**

"E."

23. By letter dated July 17, 2017, Miramar rebutted ACCO's arguments in support of its denial of coverage and provided ACCO with extrinsic evidence which further evidenced the potential for coverage. Miramar again requested that ACCO reconsider its denial of coverage. A true and correct copy of Miramar's July 17, 2017 letter is attached hereto as **Exhibit "F."**

24. By letter dated July 28, 2017, ACCO reaffirmed its denial of coverage. A true and correct copy of ACCO's July 28, 2017 letter is attached hereto as **Exhibit "G."**

## THE *FONOIMOANA* ACTION ALLEGES FACTS WHICH CONSTITUTE THE POTENTIALLY COVERED OFFENSE OF INFRINGEMENT OF SLOGAN IN MIRAMAR'S ADVERTISEMENT

25. ACCO's policy provides coverage for the "personal and advertising injury" offense of "infringing upon another's … slogan in your 'advertisement.'"

26. ACCO's defense duty was triggered by factual allegations in the *Fonoimoana* Action and extrinsic facts provided to ACCO, which revealed a possibility that Fonoimoana's claims against Miramar may be covered by the policy.

27. There are three elements to ACCO's "Advertising Injury" coverage: (1) offense; (2) advertising; and (3) causation.

### The Offense Element is Met

28. ACCO's policy provides coverage for the "personal and advertising injury" offense of "infringing upon another's … slogan…"

29. Fonoimoana alleged that he used the phrase "Queen of the Beach" as an advertising tagline to attract attention to his volleyball tournaments and to advertise his products. The Counterclaim alleged:

> 11. Since then, Fonoimoana has hosted two additional Queen of the Beach tournaments and has incorporated the QOB Mark in promotion of same. These were held on May 2, 2015 and April 10,

- 5 -
COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND BREACH OF
THE COVENANT OF GOOD FAITH AND FAIR DEALING

2016. The May 2, 2015 tournament was at the Manhattan Beach pier and was the 1st annual Mira Costa Queen of the Beach tournament.

12. Additionally, in order to promote each Queen of the Beach tournament, Fonoimoana used the QOB Mark in connection with a promotional website, www.queenofthebeach.net. Recently, Fonoimoana also purchased www.queenofthebeachinvitational.com, ("QOB Website") to which those who visit www.queenofthebeach.net are now automatically redirected.

13. Since August 2014, the popularity of the Queen of the Beach tournament has grown exponentially. As such, Fonoimoana has teamed up with various sponsors to expand the one-day annual competition into the Queen of the Beach Invitational, where top high school and college athletes from all over the United States travel to Southern California to compete for the prestigious title of "Queen of the Beach."

14. In promoting the Queen of the Beach Invitational, Fonoimoana has also utilized various social media outlets including Facebook, Instagram, Twitter, and Snapchat under and in connection with the QOB Mark.

15. Additionally, Fonoimoana has always promoted the Queen of the Beach tournaments by giving away hats bearing the QOB Mark. Today, he promotes Queen of the Beach with hats, t-shirts, and bags which all bear the QOB Mark. Some of these products are also for sale on the QOB Website.

30. Fonoimoana alleged that Miramar also used the phrase "Queen of the Beach" as an advertising tagline to attract attention to its volleyball tournaments and

products. The Counterclaim alleged:

> 16. The present counterclaims arises from Miramar's willful infringement of Fonoimoana's federally-registered QOB Mark, through Miramar's unauthorized use of the QOB Mark in connection with the promotion, advertising, and/or marketing of Miramar's volleyball competitions and sporting goods.
>
> …
>
> 46. Miramar's appropriation, adoption and use of the QOB Mark in connection with the sale, promotion and advertising of its goods and services is likely to confuse or mislead consumers into believing that Miramar's goods and services are authorized, licensed, affiliated, sponsored, and/or approved by Counterclaimant, thus constituting a violation of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200, et. seq.

31. Fonoimoana's assertion of ownership over the phrase "Queen of the Beach" and its own use of "Queen of the Beach" in its advertising and on its products as an attention getting phrase together with Miramar's alleged use of the same phrase in connection with advertising its products/services are allegations of slogan infringement.

### **The Advertising Element is Met**

32. The advertising element is met because the Counterclaim contains allegations of advertising:

> 16. The present counterclaims arises [sic] from Miramar's willful infringement of Fonoimoana's federally-registered QOB Mark, through Miramar's unauthorized use of the QOB Mark in connection with the promotion, advertising, and/or marketing of Miramar's volleyball competitions and sporting goods.

…

25. Miramar's unauthorized use of the QOB Mark in interstate commerce and advertising relating to same constitutes false designation of origin and a false representation that its goods and services are offered, sponsored, authorized, licensed by or otherwise connected with Counterclaimant and are of the same calibur [sic] as that assured by Counterclaimant's QOB Mark when in fact they are not.

…

33. Miramar's unauthorized use of the QOB Mark in interstate commerce and advertising relating to same constitutes false designation of origin and a false representation that its goods and services are offered, sponsored, authorized, licensed by or otherwise connected with Counterclaimant and are of the same calibur [sic] as that assured by Counterclaimant's QOB Mark.

…

46. Miramar's appropriation, adoption and use of the QOB Mark in connection with the sale, promotion and advertising of its goods and services is likely to confuse or mislead consumers into believing that Miramar's goods and services are authorized, licensed, affiliated, sponsored, and/or approved by Counterclaimant, thus constituting a violation of the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200, et. seq.

### The Causation Element is Met

33. ACCO's Policy requires that the "personal and advertising injury" be caused "by an offense arising out of your business…."

34. The Counterclaim broadly alleged a business dispute.

35. The Counterclaim further alleged that Miramar's advertising/promotion has resulted in injury suffered by Fonoimoana:

> 29. As a direct and proximate result of Miramar's infringing conduct, Counterclaimant has been injured and will continue to suffer irreparable injury to his business and reputation unless Miramar is restrained by this Court from infringing Counterclaimant's QOB Mark.
>
> ...
>
> 49. As a direct and proximate result of Miramar's unlawful infringement, Counterclaimant has suffered damages and will continue to suffer damages in an amount that is not presently ascertainable but will be proven at trial. Counterclaimant is entitled to all available relief provided for in California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200, et. seq. including permanent injunctive relief.
>
> …
>
> **PRAYER FOR RELIEF**
>
> …
>
> 4. Ordering Miramar to recall from any distributors and retailers and to deliver to Fonoimoana for destruction or other disposition all remaining inventory of all products bearing the QOB Mark, including but not limited to all advertisements, promotional and marketing materials bearing the QOB Mark;

### **No Exclusions Apply to Eliminate ACCO's Defense Duty**

36. ACCO's Policy includes an Intellectual Property Exclusion which does not bar ACCO's defense duty because the Exclusion clearly states:

> However, this exclusion does not apply to infringement, in your "advertisement", of… slogan.

## FIRST CAUSE OF ACTION

### (Declaratory Relief)

37. Miramar incorporates by this reference each and every allegation set forth in the preceding paragraphs of this complaint as though fully realleged herein.

38. Pursuant to the federal declaratory judgment statute, 28 U.S.C. § 2201(a), there is an actual and justiciable controversy over whether ACCO had a duty, under the terms of its insurance policy, to provide a defense to Miramar for the claims made in the *Fonoimoana* Action.

39. Miramar requests a judicial determination of the parties' rights and duties with respect to each other, including a declaration (1) that ACCO had a duty to defend Miramar in the *Fonoimoana* Action; (2) that ACCO breached that duty; (3) that such breach was unreasonable and in bad faith; (4) that ACCO is liable to Miramar for all contract and tort damages resulting therefrom; and (5) that ACCO is liable to Miramar for all costs, including attorneys' fees, incurred and to be incurred by Miramar to obtain the benefits it was entitled to under the ACCO Policy.

40. Judicial declaration of the parties' rights and responsibilities with respect to the matters set forth herein is necessary and appropriate under the circumstances presented herein.

## SECOND CAUSE OF ACTION

### (Breach of Contract)

41. Miramar incorporates by this reference each and every allegation set forth in the preceding paragraphs of this complaint as though fully realleged herein.

42. A valid contract exists between Miramar and ACCO.

43. Miramar fully performed and complied with all of its obligations and conditions pursuant to the policy, except those obligations and conditions that were waived or excused.

44. Pursuant to the terms of the contract, ACCO was obligated to provide Miramar with an immediate and complete defense to the Counterclaims in the

*Fonoimoana* Action.

45. ACCO owed Miramar contemporaneous reimbursement of defense costs because the claims asserted against Miramar were potentially covered under the ACCO Policy.

46. By refusing to acknowledge its contractual defense obligation, refusing to pay for Miramar's defense in the *Fonoimoana* Action and refusing to reimburse attorney's fees and costs incurred by Miramar to defend the *Fonoimoana* Action, ACCO failed to perform its contractual obligations and materially breached the terms of the ACCO Policy, without justification or excuse.

47. As a direct and proximate result of ACCO's material breach of its Policy, Miramar has suffered damages in the form of unreimbursed attorney's fees and costs incurred defending the *Fonoimoana* Action, plus interest thereon at the maximum legal rate from the date of each invoice.

## THIRD CAUSE OF ACTION

### (Breach of the Covenant of Good Faith and Fair Dealing)

48. Miramar incorporates by this reference each and every allegation set forth in the preceding paragraphs of this complaint as though fully realleged herein.

49. ACCO's Policy contains an implied covenant of good faith and fair dealing which requires that each party to a contract discharge its contractual obligations fairly and in good faith so as to not injure the right of the other party to receive the benefits of the contract. It also requires an insurer to give at least as much consideration to the interests of its insured as it does to its own.

50. An insurer's refusal to defend its insured against a third party claim potentially covered by its policy is a breach of the implied covenant if the refusal was unreasonable and without proper cause.

51. ACCO is liable to Miramar for breaching the covenant of good faith and fair dealing, implied by law in the policy ACCO issued to Miramar because ACCO unreasonably and without proper cause denied its duty to defend Miramar in the

*Fonoimoana* Action. Despite Miramar's repeated requests for reconsideration of its denial of coverage and detailed legal and factual analysis and extrinsic evidence supporting Miramar's request for a defense, ACCO repeatedly and unreasonably continued to deny its defense duty in the *Fonoimoana* Action.

52. As a direct and proximate result of ACCO' actions, Miramar has incurred damages in an amount to be determined at trial.

53. As a further direct and proximate result of the conduct of ACCO, Miramar has been obligated to expend and incur liability for attorney's fees and costs in this action in an amount not yet fully ascertained, but which will be submitted at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Miramar prays for judgment in its favor and against Defendant ACCO, both monetary and declaratory, as follows:

1. For a declaration: (1) that ACCO had a duty to defend Miramar against the claims made in the *Fonoimoana* Action; (2) that ACCO breached that duty; (3) that such breach was unreasonable and in bad faith; (4) that ACCO is liable to Miramar for all contract and tort damages resulting therefrom and (5) that ACCO is liable to Miramar for all costs, including attorney's fees, incurred and to be incurred by Miramar to obtain the benefits it was entitled to under the ACCO Policy.

2. For damages resulting from ACCO's breach of its insurance contract, in the form of unreimbursed attorney's fees and costs incurred by Miramar in the *Fonoimoana* Action.

3. For damages consisting of all direct, indirect, consequential, incidental, special, compensatory, and other continuing tort damages resulting from ACCO's bad faith breach of its duty to defend Miramar in the *Fonoimoana* Action.

- 12 -
COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

4. For attorney's fees incurred and to be incurred by Miramar to obtain the benefits Miramar was entitled to under the ACCO Policy at issue in this lawsuit (*i.e., Brandt* fees);

5. For pre-and post-judgment interest as allowed by law; and

6. For such further and additional relief as this Court may deem proper.

DATED: May 17, 2018

*/s/ Eric R. Little*
Eric R. Little, Esq.
Najwa T. Karzai, Esq.
LITTLE & KARZAI LLP
Attorneys for Plaintiff Miramar Brands Group, Inc.

COMPLAINT FOR DECLARATORY RELIEF, BREACH OF CONTRACT, AND BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING